RENFROE v. HALL. (No. 1315.)

(Court of Civil Appeals of Texas. Amarillo. March 13, 1918. Rehearing Denied, April 10, 1918.)

1. CHATTEL MORTGAGES ⟨⊜⟩5 — BAILMENT—WHAT CONSTITUTES.

A contract to hold a piano for sale, the title to remain in the music company, price on sale to be immediately paid over, piano to be returned upon request at any time before sale was a bailment with right to sell, and not a mortgage required by Rev. St. 1911, art. 5654, to be registered.

2. PLEDGES ⟨⊜⟩24—PLEDGEE AS BONA FIDE PURCHASER.

Where a party sold a piano, and received the purchase price thereof, and thereafter pledged another piano, to which he did not have title, to the buyer to secure delivery, and the pledgee subsequently received notice of ownership from the owner of the pledged piano, and later entered into an agreement with the seller to accept the pledged piano in place of the one he bought, the owner can recover the piano, as the pledgee was not a purchaser without notice from one apparently the owner.

Appeal from Taylor County Court; Hon. E. M. Overshiner, Judge.

Action by E. E. Hall against George Renfroe and another. Judgment for plaintiff, and the named defendant appeals. Affirmed.

W. D. Wilson, of Spur, for appellant. Scarborough & Davidson, of Abilene, for appellee.

HUFF, C. J. Hall, the appellee, sued Stiffler and George Renfroe, and alleged that he consigned to Stiffler a certain piano under a written contract, hereafter set out, the title to which remained in plaintiff; that Stiffler, prior to the contract of consignment, contracted with Renfroe to sell him a piano; Renfroe had paid Stiffler the consideration, and Stiffler then went to Abilene, made the contract with plaintiff, and obtained the piano, and afterwards delivered it on his (Renfroe's) debt; that Renfroe did not buy the piano, but held it as a pledge until Stiffler produced the piano which Renfroe had contracted and paid for; that Renfroe had no right of title or possession as against Hall,

etc. Renfroe alone answered by general denial, and that Stiffler had possession of the piano and was the apparent owner, and, believing him to be the owner, he purchased it without notice or knowledge of plaintiff's right, title, or claim, and in good faith, for a valuable consideration; that, if Stiffler was the agent of plaintiff, that he delivered possession to Stiffler, and clothed him with the indicia of ownership; and that he bought in good faith, without notice, etc., and was an innocent purchaser, without any notice or knowledge of Stiffler's agency. The case was tried before the court, who rendered judgment for Hall for the piano and the rents due thereon, and filed the following findings of fact:

"(1) On or about the 25th of April, 1916, plaintiff shipped to defendant A. Stiffler the piano in controversy, to be sold by the said Stiffler, as agent for the plaintiff, under the terms of a written contract of agency introduced in evidence therein, whereby the title to said property was to remain in plaintiff until sold by the said stiffler, and the proceeds of sale were to be the property of plaintiff; that the wholesale market value of said piano was $350, and the retail market value of the same was $550.

"(2) That prior to the time said Stiffler made said contract with plaintiff, and prior to the time said Stiffler received said piano, he, the said Stiffler, had made a contract with defendant George Renfroe to trade him a piano in consideration of an automobile and a cow and calf. Said piano was selected by said Renfroe from cut and description shown in a catalogue which was shown by said Stiffler to said Renfroe.

"(3) The piano in controversy was shipped by plaintiff to Stiffler at Spur, Tex., and prior to its arrival Renfroe had delivered to Stiffler the automobile and cow and calf. Renfroe expected a piano of the kind he had ordered of Stiffler and Stiffler told Renfroe that he had a piano at the depot which was not exactly like the one he ordered, but that he (Renfroe) could take said piano and hold it until he (Stiffler) got another one. Stiffler further told Renfroe that this piano was his property, and he had paid for it, and delivered possession of the same to Renfroe, who at that time had no knowledge of any rights or claims of plaintiff, and the said Renfroe took the same in good faith, believing it to be the property of A. Stiffler.

"(4) Some two or three weeks after the delivery of the piano by Stiffler to Renfroe, plaintiff apprised Renfroe of his claims and demanded possession of the piano, which Renfroe refused, saying that he was going to keep the piano until Stiffler delivered him another one. After this Stiffler had a piano shipped to Spur, and asked Renfroe to exchange the piano in controversy for this piano. Renfroe expressed a willingness to do so, provided the piano suited him and his wife, but Renfroe ascertained that this piano had been shipped with bill of lading attached, and that there would have to be paid $180 before the same could be delivered to him. Stiffler said he did not have the money to pay this, and Renfroe refused to pay it. Stiffler failed and refused to deliver Renfroe another piano, and permitted Renfroe to keep the piano in controversy in satisfaction of the trade for the automobile and cow and calf.

"(5) That Renfroe has had said piano in his possession after demand, and the reasonable rental value of the same is the sum of $10 per month from June 1, 1916.

---

⟨⊜⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"(6) That defendant A. Stiffler has not paid plaintiff anything for said piano.

"(7) The written contract between plaintiff and A. Stiffler was as follows:

"'Abilene, Texas, 4/25/16.

"'I, A. Stiffler, have this day received of the Hall Music Co., one piano numbered 99134, styled 90, Werner Player, same to be held by me on sale for said Hall Music Co., as per agreement made this day, said piano to remain the property of the Hall Music Co. and to be immediately paid over to said Hall Music Co. It is further agreed that any time before said piano is sold or leased I will, upon request of said Hall Music Co., return said piano to them without expense. [Signed] A. Stiffler.'"

[1] The first and second assignments are to the effect that the court erred in admitting the contract between appellee and Stiffler in evidence, and in rendering judgment for appellee because under article 5654, R. C. S., the contract was a chattel mortgage, and had not been filed for registration as required for chattel mortgages. The contract is not, in our opinion, a contract of sale in which title was reserved to secure the purchase money, but was nothing more than a bailment, giving the bailee the right to sell, making him an agent in the nature of a factor. Milburn Mfg. Co. v. Peak, 89 Tex. 209, 34 S. W. 102; Stein Double Cushion Tire Co. v. Fulton, 159 S. W. 1013.

[2] The third assignment is to the effect that Renfroe was entitled to judgment because, as found by the court, he took the piano from Stiffler as a pledge to secure the delivery of a piano purchased without notice that the agent was not the owner, which was afterwards applied to the satisfaction of the obligation with the consent of Stiffler. A proposition is presented thereunder to the effect that a purchaser from an agent of property of an undisclosed principal, in good faith, without notice, relying upon the agent's apparent ownership, is entitled, when sued by the owner, to any defense against the principal which existed against the agent at the time when the purchaser was chargeable with notice as to who was the true owner. The assignment and propositions assert different propositions of law. We think it exceedingly doubtful, under appellant's answer, if the proposition presented under the assignment be correct, whether appellant could require an adjustment of equities. It is not alleged in the pleadings that any money or property was advanced to Stiffler on this piano, and that appellant was induced to do so by reason of the agent's apparent ownership, nor is it alleged the amount which he was induced to so advance before appellant had notice as to who was the true owner. The pleadings are that appellant purchased in good faith, without knowledge that there was an undisclosed principal. The findings of fact by the trial court established that there was no purchase of the piano before appellant knew that appellee had asserted title to the piano and had demanded of appellant its return. The facts

further show, as found, that an automobile, a cow and calf, were delivered to Stiffler on a contract to deliver him a certain kind of piano selected from a catalogue, and that the piano in question was not the kind ordered, and that it was not delivered as a fulfillment of the contract, but only held until the kind of piano ordered could be secured. Manifestly there was no sale up to this time. Appellant was not induced to pay anything on the faith of the representation that this particular piano belonged to Stiffler. He had made his payment only on the promise of Stiffler that he would deliver a certain kind of piano ordered. It will not, therefore, be necessary to determine whether, under the facts of this case, the appellee, by intrusting Stiffler with the piano, should be estopped from asserting that the title to the piano did not pass, or that he was an undisclosed principal in an agency contract at the time of making the order for a piano and paying therefor. Holmes v. Tyner, 179 S. W. 887–892. The relation established by the transaction between appellant and Stiffler was that of creditor and debtor, and was so existing when Stiffler turned the piano over to appellant to hold until he performed his obligation. Before there was any pretense of a sale by Stiffler to appellant of the piano to satisfy the obligation, appellant was notified and had knowledge that the piano belonged to appellee, and that Stiffler was only an agent with authority to sell. It is a general rule when an agent has only the indicia to sell he cannot mortgage, pledge, barter, or exchange, and, if the property is so sold, the owner may recover the property. The facts of this case clearly bring it within the rule established in this state. McCreary v. Gaines, 55 Tex. 485, 40 Am. Rep. 818; Low v. Moore, 31 Tex. Civ. App. 460, 72 S. W. 421; Belton v. Belton, 64 Tex. 337; Warner v. Martin, 11 How. 209, 13 L. Ed. 667; Chattanooga, etc., v. Gorman, 12 Tex. Civ. App. 75, 34 S. W. 308; Skaggs v. Murchison, 63 Tex. 348. It is generally held if an agent who has general authority to sell transfers his principal's goods to a third person in payment of or as security for the agent's own debt, the principal may, as a general rule, recover from the third person the goods so transferred or the value thereof. Authorities supra; R. C. L., vol. 11, Factors, § 10, on page 760; Mechem on Agency, §§ 2509, 2512. We would not, in the absence of a statute, be authorized to require the repayment of the consideration before the appellee could recover his property, even if we should find that it had been advanced upon the property upon the faith that the agent was the apparent owner thereof. The advancment, however, in this case, was not so made, as found by the trial court. Mechem on Agency, § 2511.

Under the findings of fact we think the conclusions of law filed by the trial court present

sound propositions of law. His able opinion has been of much assistance to us in the consideration of this case.

The judgment is affirmed.